Good morning, Your Honors. May it please the Court, Judah Lakin appearing pro bono on behalf of Petitioner Mr. Padilla Cuenca. I'm also here with my co-counsel Daniel Warner and Mark Vanderhout. I intend to reserve five minutes for rebuttal. Mr. Padilla Cuenca comes before this Court seeking to vindicate his statutory right to reopen his proceedings. Let me just see if I understand your position. Sure. Are you arguing that before the removal order is reinstated, he can't seek review, but the moment the reinstatement process ends, he can and the bar is lifted? That's a secondary argument of ours. We have two arguments, but that is one of them. We think that's one potential way to read the statute, that essentially the conflict is between the ability to file a motion to reopen during the process, as you just described, but it doesn't, after that process is complete, there's sort of a temporal limitation, and then you can file your motion to reopen. Does that clarify that argument? Yeah. Okay. But we think there's a stronger argument potentially, or at least one that also accords with this Court's case law, which is that essentially what is actually prohibited by the statute is a collateral attack on that order in the reinstatement proceeding itself. So it's about a procedural vehicle that this Court, in Morales v. Chiodo and Miller, made clear. It has cut off. That's how it's interpreted, the statute. So the argument is as soon as the reinstatement process ends, you can collaterally attack it? That's the temporal argument, but I think there's a separate argument, which is he could file his motion to reopen during the reinstatement proceeding. It's a separate sort of parallel track over here. The point is he can't use the fact that he is subject to a reinstated removal order and that process to get at the underlying order, which he used to be able to do. The old statute, 1252F, allowed for a collateral attack. You ended up back in proceedings. They issued an order to show cause. You would be charged under that statute and you would have the opportunity to apply for relief. So when does the reinstatement process end? So the reinstatement process ends as soon as the order is reinstated. And here, there's no question that the order has been reinstated. He's now in separate withholding-only proceedings. Now, you cited supplementally the Cordova-Soto case from the Seventh Circuit. Actually, we cited Cordova-Soto in our opening brief, but the government cited it in the 28-J letter, yes. Well, let me ask you this. That case rejected the idea that the reinstatement bar applies only during the reinstatement process. Holding that, the bar is permanent. Yes. Cordova-Soto does seem to hold that it's a permanent bar. In doing that, it collected all the cases from other jurisdictions, but did not mention the Morales case, which you rely on in this case. What's the implication from that? So, quite obviously, we think Cordova-Soto is wrongly decided, and we think it does not have the — it doesn't consider the backdrop that Morales-Uzquierdo, and now Miller, reinforcing Morales-Uzquierdo, provides. It also essentially is contrary to Fernandez-Vargas, the Supreme Court case. I mean, Morales-Uzquierdo relied on Fernandez-Vargas in saying that what reinstatement is about is as a procedure. It's a procedure to expeditiously remove an individual from the United States. It says nothing about their ability to collaterally attack the order outside. Morales-Uzquierdo specifically says this does not change the noncitizens' rights and remedies, and does not change the fact that it creates no new obstacles to attack the validity of the underlying order. Cordova-Soto ignores all that and essentially says, we don't actually really have any due process concerns here, and we're just going to read it as a permanent bar because we think they knowingly reentered the country, and they should be essentially punished as a result and never be able to vindicate their rights. But with respect, Morales-Uzquierdo, we indicated that a prior order is not subject to being reopened or reviewed, in quotes, during the course of the reinstatement process. That is just an indefinite period. How are we supposed to construe Morales-Uzquierdo in the context of this case? Well, I think there are potentially two ways to construe it. So one is you could read it as a temporal limitation and saying during, you could read during as a temporal limitation the reinstatement process. There's no question that the reinstatement process is over, and he filed his motion to reopen after the reinstatement process was over. His order has been reinstated. You can see it at CAR 348. He's now in withholding only proceedings. It's a separate proceedings, and there's no question under this court's case law that that's a separate thing. Padilla-Ramirez makes this clear. Ortiz-Alfaro makes this clear. The order is administratively final. That's one option. The other option is, I think, also consistent with Morales-Uzquierdo and more so Miller now that's reinforced Morales-Uzquierdo, which is talking about your ability to get at the underlying order in the reinstatement proceeding itself. That's the exact language that Miller, sorry, yes, that Miller quotes saying what we're concerned about, the way that we have construed 1231A5 to avoid due process concerns is that you are no longer able to get at the underlying order in the reinstatement proceeding itself, but that leaves unaffected your right to file a motion to reopen. And it has to be that way. Well, let me ask, why isn't that during the course of the reinstatement process language at the end of the Morales decision, why isn't that just dicta? I think it's very clearly not dicta, Your Honor, because you cannot, the en banc court in Morales-Uzquierdo was only able to find that the reinstatement process is constitutional because it does not affect the noncitizens' rights and remedies otherwise. Otherwise, you can't hold both of these things and have them be constitutional. It can't be true that you can reinstate an order that violated due process and that the person can never otherwise attack the validity of that order. I think you would have a suspension clause problem at that point. There has to be a way for you to attack the underlying order. And that's why Morales-Uzquierdo was very clear that it does not affect the rights and remedies, and that language has been quoted in other opinions. It's been considered by this court. I think the underlying logic of Villan Guiano talks about it. Arias Ordonez talks about it. Like, at the end of the day, when the reinstatement procedure is over, the noncitizen is in the exact same position they were before. And that language has been repeated multiple times in this circuit. You are no worse off after the reinstated removal order than you were before. But if we define the reinstatement process as lasting until, in this case, the petitioner is physically removed from the U.S., wouldn't that address your constitutional concerns? Potentially, Your Honor, but I think that that doesn't make a lot of sense, and this case is a good example why. First of all, as I already said, I think it's clear the reinstatement process is over. The order is administratively final. And what's your best argument for why it's over? Sure. I think I have multiple arguments. So one is 241.8e, which specifically talks about what happens. That's the regulation governing this, right? So what it says is the order is reinstated, then you get sent to withholding only. So there's no – like, that's clear. Also, Padilla-Ramirez is very clear that these are separate proceedings and the order is administratively final. Ortiz-Alfaro is only talking about for purposes of judicial review, and that's a constitutional avoidance opinion to specifically make sure you can apply. And here, it wouldn't make sense, because the only thing that's staying the execution of the reinstated order is his withholding only proceedings. It would be a little illogical to say, well, somebody who has a reasonable fear and is pursuing that relief should have to wait to be deported to file their motion to reopen. Well, I agree it may be a little illogical, but as you know, as somebody said in an earlier thing, the immigration law is nothing but illogical. I mean, we've got four different levels of major laws that are put on top of each other. They don't correspond with one another. And as you know, sometimes you've got to leave the United States to start a process like the 10-year period and so on. So I guess my concern in this case is, is this one of those cases where he has to be out of the country to really trigger this? Certainly, Your Honor. I mean, at a minimum, we agree that it can't be a permanent bar. And so if the court were to say that the reinstatement process is over once they've been deported, that would resolve the permanent bar problem. And essentially – That was my earlier question. Yes. So we agree with that. But I do think it raises some potential issues around – Let me back up. You say it can't be a permanent bar. You're talking about the Morales decision for that position, right? Well, our position is that Morales, Escuero, and Miller have already made that clear. It's like we're not saying that, right? The court has said that. But, yes, we think those – Because the statute, 1231A5, says it is a permanent bar. Well, I would disagree, Your Honor. It says it's not subject to being reopened. But the way that that has been construed by this court is it's not subject to being reopened within the reinstatement proceeding. It doesn't say you are permanently barred from filing a motion to reopen. It doesn't even use the word permanently, which it clearly could have. And the INA does in other sections. So – Or why didn't you file it in that time? Your argument is that it's a permanent – it's a bar until the process is over. Will you file it before the process is over? Well, no, Your Honor, as I've tried to explain but perhaps haven't done well, the withholding-only proceedings are separate. The reinstatement process is over. He can't file his motion to reopen in the withholding-only proceedings. The only thing that the IJ can consider in the withholding-only proceedings is his withholding-only claim. You have to file the motion to reopen before the judge that issued the order. If I understand the reason for the bar during the reinstatement proceedings, it is that you're supposed to challenge your removal when you were removed, and there's a procedure there, and you can't do it when we reinstate that removal. You've missed it. And your position now, if I understand it, is that, but if something happens after the reinstatement or you have a ground to challenge after the reinstatement, you can still challenge it. Well, our position is that there are petitioners like ours and like the petitioner in Miller who had no opportunity. They didn't get the due process they were due, right? Like the petitioner in Miller, she couldn't have possibly challenged it at the time. Because it was in absentia. Correct, and she didn't know about it. And your position is that because you were incompetent? Because the petitioner was mentally incompetent, yes. I'm hoping I'm still mentally incompetent, yes. But we'll see about that. We get the last word on that, don't we? Yes. But your client was incompetent and didn't have any opportunity to challenge. That's correct, Judge. Do you want to save your time? Okay, I just want to make sure that it goes no farther than that. Yeah, that's the due process concern, yes. Thank you. And we'll stipulate you're not incompetent. Okay. Thank you. You're doing a fine job. All right, let's hear it from the Governor. Good morning, Your Honors. May it please the Court, Jonathan Ross for the Attorney General. At each stage of this litigation, both then and now, Mr. Padilla benefited from every reasonable process to ensure the protection of his rights and interests. On the point of the permanent bar under the reopening bar, I think it's very important to understand Miller and Morales Esqueredo in the proper context. That is specifically in the in absentia context. And in those decisions, the Court just doesn't say in instances where there are due process concerns, period. Those due process concerns are specifically limited or are framed with two issues. First, that a due process concern exists in the context of someone not even knowing that they were ordered removed only to subsequently come to reenter the country and to have that removal order come to light. Second, and moreover, there's a statutory exception in the in absentia motion to reopen context that doesn't exist in the case before the Court. 1231A5 is very clear on its face that in a reinstated removal order such as Mr. Padilla's, it's not subject to reopening or reconsideration. Was Morales based on that exception? The exception for, yes, it was in the context of a motion to reopen in absentia proceedings. Okay, they didn't cite the statute for that, though, did they? Under 1229AC7. In Morales, the Court held that the reinstatement of a prior removal order does not violate due process regardless of the process afforded in the underlying removal proceeding. The Court stated the only effect of the reinstatement is to cause the alien's removal and that it does not change an alien's right or create new obstacles to attacking the validity of the removal order. That's correct, but again that's... Well, let me ask my question now. I'm sorry, yes, Your Honor. How could this be true if reinstatement permanently bars reopening or review of the underlying removal order and renders an alien ineligible for asylum? That case is decided, as was Miller, specifically in the in absentia context. Here we don't have any of those similarities. Most importantly, we have... So the language in Morales applies only in the in absentia context. That's correct. Where does it say that? There's... So under 1229 AC 7, if I recall correctly, there's two exceptions. There's a 1 and a 2. One is in exceptional circumstances. I believe one of them relates to exceptional circumstances. One relates to the in absentia ground. Well, where does Morales say that, though? I would have to pull my copy of Morales, and I'm happy to submit supplemental authority on that. But, again, turning back to the context in which the Miller case and the Morales case were judged, not only was it an in absentia case, but there was objective evidence in the record that the petitioner had never received notice of the removal order. In this case, this case is clearly distinguishable, where Mr. Padilla had every notice possible. He was personally served with his notice to appear. He appeared in court. He had every... The procedural protections that were afforded him go on and on and on. Not only did the immigration judge make an explicit finding that his... an explicit finding regarding his rights to have an attorney, his right to file a cancellation of removal application, all of this was explained to him, and the immigration judge made an explicit finding on the record that it was knowing involuntarily. You are trying to distinguish Morales y Esquerdo, and I assume Miller on that basis said that it's in absentia. But, of course, there is some language in Morales y Esquerdo that I quoted to your opposing counsel that suggests that there is a terminal limit to the reinstatement process and seems to suggest that if, in this case, the petitioner were outside the country, he could indeed then seek to reopen. Is that your position as well? Your Honor is 100 percent correct. There is a mechanism in place to challenge one's removal order, and that is there's a time constraint on it. He has 90 days to do it, and the intention of Congress was to ensure that someone did have a right to challenge the underlying removal order, and they enshrined that in the statute so far as... returned to their country, and they did it within time. Mr. Padilla did not do... Just to be sure, there is an agreement on this. So their concern that they've vigorously expressed, they're concerned about due process. Yes. This guy can't be just cut off without any due process. The government's response, whether or not Morales y Esquerdo only applies in the in absentia context, is that if he leaves the country, then there's a specific right for him within a 90-day period, according to you, to challenge this. So there is due process. In addition, he's received all this due process over the years. Is that your position? That's correct, yes, Your Honor, then and now. He continues to receive due process protections from the United States of America. Even in his withholding only proceedings, he has now met the Franco certification, the Franco membership in the Franco class to be afforded additional protections. This is the story about an individual who has been protected by every procedural, every reasonable procedural safeguard that this country offers. And Mr. Padilla forfeited his right to be able to challenge his underlying order by taking the law into his own hands. He said that he... What he's asking this court to do is to not only ignore the statute and clear congressional intent, but he's asking this court to create, in the first instance, jurisdiction for the agency to save him from his own misconduct. He's inviting the court to legislate, and I vehemently, the government vehemently asks the court to reject this invitation. In this case, Mr. Padilla had lawful... had a lawful avenue that he forfeited, and that is what's problematic about these proceedings. Does the mental condition of the petitioner, not his counsel, have anything to do with the nature of this particular action at this point? At this stage of the proceedings, no, Your Honor. The... His mental illness, although... His mental illness, although certainly part of his proceedings that are still pending before the immigration judge, they don't play a factor in this case, especially where we have an immigration judge, as affirmed by a three-member panel of the board, that went through such great lengths to make sure that his... that his rights were protected, as is an immigration judge's duty for any pro se litigant. He went through all of his rights on the record, and in the decision, in the written decision from the immigration judge, all of that process is memorialized, and most of our cases, we see the same process done in an oral decision with a fraction of the specificity. Here we can be very certain that the immigration judge took every effort to ensure that those rights were protected. What I'm concerned with in the Morales case is in the Morales case, there's language that says, quote, during the course of the reinstatement process, end quote, language in there in Morales. You're familiar with that language, right? Yes, Your Honor. The board quoted that as well. And it seems to be an important assumption underlying the court's holdings that reinstatement doesn't violate due process because it doesn't change an alien's rights to attack the removal order. My understanding now, based on your argument today, is that you're distinguishing the language in Morales from the facts in this case because in the Morales case, the Morales court was relying on the fact that it was an in absentia process. Is that what you're saying? Yes, Your Honor, as was the case in Miller. And the court in that case relied on 1229A7? If I'm not mistaken. Actually, no. I believe it was actually 1229AB5C1 and 2. But the reason we can ignore that during the course of the reinstatement process language in this case is because this case is not in absentia like Morales was. That's correct. And in absentia order, there's obviously due process concerns if a noncitizen first learns of a removal order when they're trying to come back into the country. That was not the case here. And really what I think that my colleague is trying to ask the court to make a new exception, to make an exception in the mental health context. And unfortunately, the statute just doesn't allow for an exception like that to be made. When does the reinstatement process end? The reinstatement process ends... The language of it is made a little bit murky, but the government's position is that the reinstatement process ends when those proceedings, after that reinstatement, after that actual order is reinstated. That, at that point, actually creates a new opportunity for the noncitizen to file a petition for review directly to this court. And you're saying previously that they had to leave the country for that period to end. Is that correct? They would have to leave the country in order to file a motion to reopen, to avoid the reopening bar. Yes, Your Honor. But it is a procedural safeguard that is afforded to everybody. However, it can be forfeited. And there's good reason behind having a policy like that. If the reopening bar did not exist, it would create every incentive for a noncitizen who's removed from the United States to sneak back into the United States, as Mr. Padilla did, and then to essentially remain under the radar until the government learns of that person's presence. Then they would, in essence, force the government's hand to relitigate a final and lawful order of removal. Clearly, Congress intended to prevent that exact procedure from happening by having the— So is it your position that once the person is removed to another country, he can move to reopen on any basis, as long as it's done within the 90-day period? That's correct, yes, Your Honor. And when does the 90-day period begin? The 90-day period begins from the actual physical removal, if I'm not mistaken. You know, another procedural safeguard that I would also like to bring to Your Honor's attention, even though Mr. Padilla waived before the immigration judge his right to appeal to the board, the government nonetheless waited the full period to actually physically remove him from this country. It's relevant inasmuch that the United States prides ourselves on the procedural safeguards that we give all under the Constitution. Although noncitizens are entitled to different protections, Mr. Padilla received every possible protection that could have been afforded. So you're saying that the government prides itself on all the due process that it's giving to immigrants? Although the court has, as the circuit has held, noncitizens in this country are entitled to different rights under the Constitution, yet the Constitution nonetheless applies. So you're saying once the petitioner is removed from this country, he can then file a petition to reopen without limitation? He can file one petition to reopen within the 90-day period, and under 1231A5, by reentering the country illegally, that right is forfeited. Well, wait a minute. I thought that's where we were. He's removed, he's been removed, he's reentered, and he's been reinstated, hasn't he? I'm sorry, Your Honor, I misunderstood the question. No, I'm talking about... Yes. We're in a situation where we are now. You've got a reinstatement order. Correct. He wants to challenge the original removal. No, Your Honor. So there is a permanent bar. However, I would also like, the government would also like the record to reflect that Mr. Padilla, again, engaging in self-help, took it upon himself, took the law into his own hands to reenter the country. Had he just presented himself at the border, he could have obtained the relief that he now seeks. He could have asked for asylum had he only presented himself at the border. My question to you a few minutes ago was when the reinstatement order is in place and he's removed from this country, he could file a petition to reopen. Now you're saying he can't because of the reinstatement bar. I'm terribly sorry, Your Honor. I misunderstood your question initially. The reopening bar is a permanent bar. Okay, so there is no opportunity for him to reopen once the reinstatement is put into place and he's removed. That's correct, but that was by his own doing. Oh, so wait a minute. Then the answer to his question also changes your answer to my question, I think. Can I ask you whether under Morales, Izquierdo, and Miller, which you say were in absentia, and that's why they're different, there is a temporal limitation according to Morales, Izquierdo. I ask you whether if Mr. Padilla goes back to Mexico, he has an opportunity to reopen. I think you told me within 90 days. Now I'm understanding you to tell Judge Reyes that since there's a permanent bar, he doesn't have that right. Is that correct? Your Honor's interpretation is correct. So he doesn't have the right. He does not. He no longer does. I was specifically referring to had he not reentered, had this been the original proceedings, he would have had a – Because of what he did after the fact, he has skewered himself in terms of – he had due process from your perspective, but that process is over as far as reopening is concerned. And if I can have the Court's indulgence to answer your Honor's question. It's over, but that doesn't – the inquiry doesn't end there. He's still under the – the United States Government is still giving him procedural protections by allowing him to apply for withholding and to give him the added benefit of a qualified representative in those proceedings. That's a different issue, though, is it not? He's still entitled to procedural safeguards that he's receiving and that he's enjoying. Just not to reopen the order. That's correct, yes, Your Honor. Other questions by my colleagues? Thank you very much. Now we will hear from the very able counsel for the petitioner, who's here – I should come here more often. You're right, who is here pro bono. Thank you very much. Yes, Your Honor. Okay, I just want to try and address and clarify a few points. So first, the government attempts to cabin Miller and Morales-DiScierto, and it's just an untenable reading of those cases. The fact that that – those individuals were – had the opportunity and now do have the opportunity under Miller and Morales-DiScierto to file motions to reopen in absentia doesn't affect our argument. The point is there is a due process violation below. Yes, in those cases, the due process violation was in absentia. In ours, it's mental competency. That's the core issue. Do you agree at least this much with the government that your clients coming back into the United States set up a different bar to seeking a reopening? Do you agree with that? No, Your Honor. I think this court's precedent is very clear, and it stems from Fernandez Vargas, the Supreme Court precedent. 1231A5 is a procedural statute. It allows you to expeditiously remove an individual from the United States. I want to be clear on this because his filing of a motion to reopen does not affect that. If he wasn't in withholding only proceedings, he would have been removed, and his motion to reopen would not have stayed the execution of that reinstated order. The purpose of the statute is to expeditiously remove individuals who have previously been removed. That remains unaffected by his separate statutory right to file a motion to reopen. The distinction the government attempts to make on the in absentia is immaterial. There's a due process violation below. He needs to be able to get to it because he's never had the opportunity to get to it before. It appears that the government is just ignoring the mental competency issue below. So from your perspective, your client goes back to Mexico, comes back into the United States, even though he, under the case law the government's talking about or the statute, he has a permanent bar against seeking reinstatement. You're saying that because of his mental issues, he retains that right, and he can't be removed in any event because of the withholding, the separate claim. Is that right? Or am I confusing it? I'm not 100 percent sure. I think that's right. I mean, our position is, like, I just want to read this line from Miller because it could be it's exactly the same as our client. Thus, if we adopted the government. Where are you in the law? Oh, I'm sorry. So that's at 1002 of Miller. Thus, if we adopted the government's reading of 1231A5, a.k.a. that it's a permanent bar, a noncitizen whose due process rights were violated in the earlier removal proceedings, this says due to lack of notice, you can insert due to mental competency, could have the resulting removal order reinstated against him without ever being afforded an opportunity to challenge its legality. And then it goes on to say, we clearly can't do that. That would violate the Constitution. And so, although. Does it make any difference, as your opponent says, that these were cases involving in absentia where nobody ever got any notice at all, whereas he says here your client has received lots of notice. Does that make any difference? No, because he's attempting to map on that due process, like as if that's the only possible due process violation. There are multiple due process violations. I mean, there are multiple possible due process violations. Ours is based on mental incompetency. The petitioners are similarly situated. Neither of them have the opportunity or the process available to them to challenge. Ours is based on mental incompetency. Hers is based on in absentia. But that doesn't matter. The point is it's a due process. Okay. Do either of my colleagues have additional questions? All right, we thank both of you. These are complicated issues. You've both done an outstanding job. We think you're wonderful. Thank you so much. Thank you for participating in our program. Yeah, and we really appreciate pro bono help. So thank you both. The case just argued is submitted.
judges: Schroeder, M. Smith, Rayes